**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karen Tolbert,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-23-00761-PHX-MTL<br><br>**ORDER** |

　　　　At issue is the denial by the Social Security Administration of Plaintiff Karen Tolbert's application for Title II disability insurance benefits under the Social Security Act. Plaintiff filed a complaint (Doc. 1) with the Court seeking review of her claim. The Court has reviewed the briefs (Docs. 11, 15, 16) and the administrative record (Doc. 8 "A.R."), and now affirms the Administrative Law Judge's ("ALJ") decision.

**I.　　BACKGROUND**

　　　　Plaintiff filed an application for benefits on October 9, 2020, for a period of disability beginning on May 1, 2019. (A.R. at 16.) Plaintiff's claims were initially denied on February 16, 2021 (A.R. at 79), and upon reconsideration on January 19, 2022. (A.R. at 110.) Thereafter, Plaintiff filed a request for a hearing which was held before the ALJ on November 9, 2022. (A.R. at 16.) On December 2, 2022, the ALJ issued a ruling unfavorable to Plaintiff. (A.R. at 13.) Plaintiff subsequently filed a request for review, which was denied on March 7, 2023. (A.R. at 1) Plaintiff now seeks judicial review with this Court pursuant to 42 U.S.C. § 405(g).

The Court has reviewed the record and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the following severe impairments: coronary artery disease, hypertension, headaches, diabetes, obesity, depression, anxiety, and mild cognitive impairment. (A.R. at 19.)

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 20.) Next, the ALJ determined Plaintiff's residual functional capacity ("RFC").[1] The ALJ found:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can never climb ladders, ropes or scaffolds or balance as defined by the Selected Characteristics of Occupations (SCO). She can have occasional exposure to excessive loud noise, excessive vibration, pulmonary irritants such as fumes, odors, dust, gases and poorly ventilated areas. She can have occasional exposure to dangerous moving machinery or unprotected heights. She can perform work involving understanding, remembering and/or carrying out simple instructions. She can work with occasional changes in a routine work setting. She can have occasional in person interaction with the public. She can perform work requiring simple judgment.

(*Id.* at 21.) Based on this RFC, the ALJ found Plaintiff could not perform any past relevant work; however, the ALJ also found that there were still a significant amount of jobs in the national economy that Plaintiff could perform. (*Id.* at 25, 27). Consequently, the ALJ concluded that Plaintiff was not disabled under §§ 261(i) and 223(d) of the Social Security Act. (*Id.* at 28.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only

---

[1] Residual functional capacity refers to the most a claimant can still do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the entire record. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019); *see also Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting substantial evidence "is an extremely deferential standard").

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i), (b). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520 (a)(4)(ii), (c). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii), (d). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv), (e). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not,

the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

## III.     DISCUSSION

Plaintiff raises two issues before the Court. First, Plaintiff argues the ALJ erred by rejecting the opinion of Plaintiff's primary care physician, Swaraj Singh, M.D., without providing sufficient explanation supported by substantial evidence. (Doc. 11 at 13.) Second, Plaintiff argues the ALJ erred in rejecting her symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence. (*Id.* at 18.)

### A.     Medical Opinion Evidence

Plaintiff argues that the ALJ committed materially harmful error when they rejected Dr. Singh's assessment without sufficient explanation supported by substantial evidence. (Doc. 11 at 13.) The Court disagrees.

In 2017, the Commissioner revised the regulations for evaluating medical evidence for all claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). Because Plaintiff filed her claim after the effective date, the revised rules apply. (A.R. at 16.) Unlike the old regulations, the revised rules do not require an ALJ to defer to the opinions of a treating physician nor assign every medical opinion a specific evidentiary weight. 20 C.F.R. § 404.1520c(a).

The revised rules instead require the ALJ to consider all opinion evidence and determine the persuasiveness of each medical opinion's findings based on factors outlined in the regulations. 20 C.F.R. § 404.1520c(a)-(b). The most important factors ALJs consider are "consistency" and "supportability." 20 C.F.R. § 404.1520c(b)(2). Supportability focuses on evidence intrinsic to the medical opinion, requiring adjudicators to look at the relevance of the objective medical evidence and explanations cited as support for the physician's medical opinion. *Id.* § 404.1520c(c)(1). In contrast, consistency focuses on

evidence extrinsic to the medical opinion, requiring adjudicators to compare consistency of the opinion to other evidence in the record. *Id.* § 404.1520c(c)(2). The ALJ can, to a lesser degree, consider other factors such as the length and purpose of the treatment relationship, the kinds of examinations performed, and whether the medical source personally examined the claimant. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

The Ninth Circuit held that the revised rules intended to abrogate its precedent requiring ALJs to provide "specific and legitimate reasons" for rejecting a treating physician's opinion. *Id.* Nevertheless, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* Therefore, an ALJ, "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)) (internal citations omitted)).

Here, Dr. Singh completed a "medical assessment of ability to do work-related physical activities" on April 12, 2021. (A.R. at 566-67.) The assessment, a two-page long form, states that Plaintiff suffers from "cognitive impairment, major depression, generalized anxiety, *severe hallucinations*, and other amnesia." (*Id.* at 567) (emphasis added.) These conditions are listed under a section of the form titled "other," and have a duration listed as twenty-four hours a day, seven days a week. (*Id.* at 566.) It is likely that the duration section is meant to indicate that these conditions remain present at all times, although it is unclear which conditions the duration section is referring to. The medical assessment also indicates Dr. Singh's belief that Plaintiff would miss time from work due to her condition. (*Id.*)

The ALJ's finding that Dr. Singh's medical opinion is unpersuasive is supported by substantial evidence. *See Orn*, 495 F.3d at 630 ("[Substantial evidence] is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (cleaned up)). Though the discussion is sparse, the ALJ addresses both the supportability and

consistency factors and presents adequate evidence to support their decision to find Dr. Singh's opinion unpersuasive.

The ALJ addressed consistency and supportability together, noting that "[Plaintiff's] symptoms are not shown to be present to the exten[t] indicated by the doctor, most specifically with regards to her hallucinations, which she has denied on several occasions." (A.R. at 25.) While not explaining their finding in great detail, the ALJ was nevertheless clear parts of the record contradicted Dr. Singh's testimony. (*Id.*) Admittedly, several sections in the administrative record show Plaintiff reporting hallucinations on dates ranging from 2018 to July of 2020. (*See, e.g.*, A.R. at 357, 363, 364, 382, 411.) Nevertheless, there are also numerous subsequent occasions where Plaintiff denied hallucinating with dates ranging from October of 2020 to August of 2022—and the ALJ cited these records to support their reasoning. (*See, e.g.*, A.R. at 441, 449, 465, 549, 787, 795.) While these records are not necessarily mutually exclusive, Dr. Singh's testimony that Plaintiff is essentially always at risk of "severe hallucinations" (A.R. at 566) is nonetheless inconsistent with and unsupported by the more recent reports in the record. (*See* A.R. at 441, 549, 787.)

In addition, as Dr. Singh listed all conditions as having a duration of twenty-four hours a day, seven days a week (A.R. at 566), the doctor's testimony of generalized anxiety, amnesia, and cognitive impairment is also partially inconsistent with the record. For example, as found by the ALJ, reports describe Plaintiff as "friendly, cooperative, [having] good memory and cognition, [and having] good concentration . . . ." (A.R. at 24.) While the ALJ primarily focused on the hallucination inconsistency, this additional evidence of a lack of the aforementioned symptoms is again another inconsistency between Dr. Singh's testimony and the objective record. (*Id.*) Therefore, the ALJ did not err by deciding Dr. Singh's testimony lacked consistency and supportability.

Furthermore, while Plaintiff argues the hallucination inconsistency, in her words the "sole example of one inconsistency," is inadequate to exclude Dr. Singh's entire testimony, it is nevertheless within the ALJ's discretion to do so. (Doc. 11 at 15.) The ALJ has the

discretion to exclude testimony when there is a substantial reason for doing so, and even a "sole example of one inconsistency" (*Id.*) is enough for an ALJ to exclude a medical opinion. *See Barnhart*, 278 F.3d at 954; *Biestek*, 587 U.S. at 108; *CalPortland Co.*, 993 F.3d at 1208. Even one example of inconsistency can be substantial. *See Orn*, 495 F.3d at 630 ("Substantial evidence is more than a mere scintilla but less than a preponderance.") (citation omitted). Also, as noted above, the hallucination testimony is not the sole inconsistency noted by the ALJ. While the ALJ focuses on the hallucination inconsistency, the ALJ also mentions, although briefly, that Plaintiff's "*symptoms* are not shown to be present to the exten[t] indicated." (A.R. at 26.) (emphasis added.) Thus, the ALJ acknowledges that more than just the hallucination testimony is inconsistent with the record. (*Id.*)

While Plaintiff correctly states that *solely* discounting a medical opinion because of the use of a "check-box" form would be erroneous, even under *Woods*, 32 F.4th at 792, that is not what the ALJ did here. (Doc. 11 at 16). The ALJ instead noted that the failure to provide an explanation, *in conjunction with* the medical opinion lacking consistency and supportability, led to them finding the medical opinion unpersuasive. (A.R. at 26.) This finding is within the ALJ's discretion, as where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017).

**B.     Symptom Testimony**

Plaintiff next argues that the ALJ erred in rejecting her symptom testimony without providing clear and convincing reasons. (Doc. 11 at 18.) The Court disagrees.

An ALJ employs a two-step process in evaluating a claimant's symptom testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ considers whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). Then, provided no evidence of malingering exists, the ALJ must evaluate the claimant's statements in the context of the objective medical

evidence and other evidence in the record. *See* 20 C.F.R. § 404.1529(c)(2)-(3). At this step, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (internal quotation marks omitted). This requirement prevents an ALJ from "arbitrarily discredit[ing]" the claimant's subjective symptom testimony. *Thomas*, 278 F.3d at 958. Despite the "clear and convincing standard [being] the most demanding required in Social Security cases," *Garrison*, 759 F.3d at 1015 (cleaned up), the ALJ need not "believe every allegation of disabling pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Instead, when assessing the claimant's credibility, the ALJ may consider "inconsistencies either in [the] claimant's testimony or between his testimony and his conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains." *Thomas*, 278 F.3d at 958-59 (cleaned up). Should the district court find that the ALJ's specific, clear, and convincing reasons are supported by substantial evidence, the court must not second guess the ALJ's judgment and should affirm the ALJ's decision. *See Fair*, 885 F.2d at 604.

Here, in evaluating Plaintiff's testimony, the ALJ appropriately followed the prescribed two-step analysis. At step one, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the above alleged symptoms . . . ." (A.R. at 26.) At step two, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

The ALJ's reasoning for discrediting Plaintiff's symptom testimony is readily discernable and supported by the record. First, the ALJ noted what symptoms Plaintiff alleged caused her to be unable to work. (A.R. at 22.)

> The claimant testified that she is unable to work due to anxiety, depression, cognitive decline and an inability to manage her emotions. She further explained she has difficulty remembering things, gets confused easily and she suffers from panic attacks. The claimant testified that she attempted to return to work at one point, but her anxiety was too great, in

> that she suffered panic attacks and mini-breakdowns. She explained that she was making mistakes and was forgetting what she was doing. The claimant testified she also suffers from migraine headaches 3-4 times a week and diabetes.

(*Id.*) In sum, Plaintiff alleged both physical and mental impairments, with the mental impairments being the primary factor in her disability claim.

Next, the ALJ noted that objective medical evidence and Plaintiff's daily activities did not give support to the extent of Plaintiff's symptom allegations. For example, MRI and CT scans of Plaintiff's brain were normal, despite her claim that "part of her brain doesn't work right." (*Id.* at 26.) In addition, the ALJ noted that although Plaintiff claimed to have difficulty interacting with others, examiners typically noted Plaintiff was "friendly, cooperative, has good memory and cognition, [and had] good concentration . . . ." (*Id.* at 24.) The ALJ also noted that certain activities Plaintiff partook in, such as using a smart phone, taking care of her personal hygiene, and shopping online were inconsistent with Plaintiff's allegations of inability to work due to cognitive decline. (*Id.* at 26.) Furthermore, the ALJ cited the record, noting that during appointments, Plaintiff "demonstrates normal concentration and intelligence." (*Id.* at 24.) The record also shows that Plaintiff cares for two animals and cleans her house without needing to be reminded. (*Id.*)

Plaintiff contends that the ALJ did not adequately connect medical records to a specific inconsistency with Plaintiff's testimony about her reported cognitive symptoms. (Doc. 11 at 19.) While some of the above findings are not explicitly linked to specific symptoms, the ALJ nevertheless gave ample support for their finding that Plaintiff's testimony was not fully supported by the medical record. (*See* A.R. at 23-25.) For example, as noted above, the ALJ directly pointed to evidence from the record that contradicted Plaintiff's anxiety testimony. (A.R. at 24.) The ALJ also mentioned Plaintiff's 28/30 score on a mental mini status examination, which contradicts allegations of severe memory problems. (*Id.*) As such, the ALJ gave specific, clear, and convincing reasons why the longitudinal record and objective medical evidence did not support the extent of the alleged symptoms. (*Id.* at 22-24.)

The ALJ provided reasoning for discrediting the Plaintiff's symptom testimony that was supported by substantial evidence. The Court therefore will not disturb the ALJ's conclusion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing." (citation omitted)).

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED affirming** the December 2, 2022, decision by the Administrative Law Judge and the Commissioner of the Social Security Administration (A.R. at 295.)

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 5th day of June, 2024.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge